**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC, | |
| Plaintiff, | Civil Action No. 15-cv-611-RGA |
| v. | **JURY TRIAL DEMANDED** |
| COMCAST CORPORATION, et al., | |
| Defendants. | |
| TQ DELTA, LLC, | |
| Plaintiff, | Civil Action No. 15-cv-612-RGA |
| v. | **JURY TRIAL DEMANDED** |
| COXCOM, LLC, et al., | |
| Defendants. | |
| TQ DELTA, LLC, | |
| Plaintiff, | Civil Action No. 15-cv-614-RGA |
| v. | **JURY TRIAL DEMANDED** |
| DISH Network Corporation, et al., | |
| Defendants. | |
| TQ DELTA, LLC, | |
| Plaintiff, | Civil Action No. 15-cv-615-RGA |
| v. | **JURY TRIAL DEMANDED** |
| TIME WARNER CABLE INC., et al., | |
| Defendants. | |

TQ DELTA, LLC,

                       Plaintiff,

                v.

VERIZON SERVICES CORP.,

                     Defendant.

Civil Action No. 15-cv-616-RGA

**JURY TRIAL DEMANDED**

## TQ DELTA'S RESPONSE IN OPPOSITION TO NON-PARTY BROADCOM'S MOTION TO ENTER CONFLICTS ORDERS FROM DSL CASES IN MOCA CASES[1]

Plaintiff TQ Delta, LLC ("TQ Delta") hereby files this Response in Opposition to Non-Party Broadcom's Motion to Enter Conflicts Orders from DSL cases in MoCA cases ("Motion") (D.I. 292[2]).

### I. INTRODUCTION

It is unfortunate that after 6 years since these MoCA cases were filed and nearly 5 years since TQ Delta retained Jackson Walker, and after representing to this Court in the DSL cases that "***were this case purely standards-based, Broadcom would not seek disqualification***,"[3] Broadcom now moves for the first time to essentially wall the McAndrews firm and impose stringent and prejudicial conditions on McAndrews and Jackson Walker as to TQ Delta's discovery of Broadcom.[4] Broadcom's reasons in its Motion are substantively similar to those it set forth to the Court in its letter at D.I. 279, to which Judge Andrews stated that he "do[es] not think it necessarily follows from my rulings in the DSL cases that McAndrews is disqualified or

---

[1] Broadcom's Motion was filed at D.I. 292 in the -611 case, D.I. 289 in the -612 case, D.I. 268 in the -614 case, D.I. 274 in the -615 case, and D.I. 303 in the -616 case.

[2] Docket references are to the -611 case unless otherwise noted.

[3] *TQ Delta, LLC v. 2Wire, Inc.*, No. 13-cv-1835-RGA (D. Del), D.I. 199 at 8. All emphasis added unless otherwise noted.

[4] TQ Delta's May 11, 2021 subpoenas to Broadcom are in large part directed to discovery of MoCA chips found in many of the accused products. These subpoenas essentially renewed TQ Delta's December 6, 2016 pre-stay subpoenas to Broadcom.

has a conflict in the MoCA cases." D.I. 283. Despite the Court's view, Broadcom unilaterally "put on hold" even discussing TQ Delta's subpoenas with Jackson Walker. *See* Exh. 1 hereto, at 1 (E. Manno June 28, 2021 e-mail). Broadcom's about-face representations to the Court, its obstinate stance in the face of the Court's statements and McAndrews's repeated representation that no Broadcom confidential information from McAndrews's many years-ago representation of Broadcom has or will be shared with Jackson Walker, and now its delay-causing Motion appear nothing more than an all-out attempt to stymie compliance with TQ Delta's subpoenas and run out the case clock.

Despite the Court's suggestion that its conflicts rulings in the DSL cases do not necessarily apply in these MoCA cases, Broadcom's Motion resorts exclusively to its purported showings and the Court's rulings in the DSL cases. Broadcom has not shown that a conflict exists here. It has not shown that McAndrews represented Broadcom on substantially related subject matter. For example, the Court's DSL rulings referenced work McAndrews once performed for Broadcom that purportedly involved specific DSL chip model numbers at issue in the DSL cases, but Broadcom's Motion here does not mention any MoCA chip model numbers. Broadcom has also not made any showing that the subject matter of the only two patents-in-suit – generally, phase scrambling technology – was the subject matter of any work McAndrews once performed for Broadcom.

Further, Broadcom has made no showing of adversity. For example, it has not shown that it is required to defend and indemnify one or more of the defendants. It is likely that Broadcom has taken the position that it has no such obligation because the asserted claims are infringed due to implementation of the MoCA standards (*i.e.*, the standards require each element of the asserted claims). More specifically, for example, under the Uniform Commercial Code, if (i) Broadcom's customers (manufacturers of MoCA equipment) specify that Broadcom's MoCA

chips need to operate in accordance with a standard and (ii) infringement is due to implementation of the standard, Broadcom presumably would assert that it makes no warranty against patent infringement. *See* UCC § 2-312(3) ("Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like ***but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications***."); Cal. Com. Code § 2312(3) (same). Such warranty exclusion and/or other contractual liability disclaimers would be consistent with both Broadcom's prior decision not to seek a conflicts-based remedy in the MoCA cases and its concurrent argument in the DSL cases that it was not aware of any adversity with McAndrews until it learned that some of the DSL infringement allegations were not standards-based.

Accordingly, and for the reasons further discussed below, Broadcom's Motion should be denied and the Court should preclude Broadcom from raising further alleged conflicts-related obstacles in these MoCA cases.

## II.   ARGUMENT

### A.  The Relief Broadcom Seeks Has Been Unequivocally Waived

Everything else aside, Broadcom has clearly forfeited any ability to now raise the challenges and seek the relief it does in its Motion. *See Conley v. Chaffinch*, 431 F. Supp. 2d 494, 499 (D. Del. 2006) (finding waiver of conflicts challenge after nine month delay from "when former client [here, Broadcom] was aware of former attorney's representation [here, McAndrews] of an adversary [here, TQ Delta] but failed to raise an objection promptly when he had the opportunity"). Broadcom was of course well aware of all of McAndrews's prior work for Broadcom and has known for years of McAndrews's later representation of TQ Delta. *See 2Wire*, No. 13-cv-1835-RGA, D.I. 238 at 3, 10, 11 (September 26, 2016 Court Order:

4

"Broadcom concedes that it was aware of TQ Delta's lawsuits and McAndrews' representation[.]"). But Broadcom elected not to seek any conflict remedy in the MoCA cases back in 2016 when it sought such a remedy in the DSL cases.

In order to argue against waiver in the DSL cases, Broadcom claimed that it had then only recently learned that the DSL cases were not entirely standards-based. And to bolster its argument, Broadcom made clear that it "would not seek disqualification" in a "purely standards-based" case (which these MoCA cases are). *2Wire*, No. 13-cv-1835-RGA, D.I. 199 at 8. This Court relied on Broadcom's tactical argument to find no waiver in the DSL cases. *See 2Wire*, No. 13-cv-1835-RGA, D.I. 238 at 12-13. Indeed, in rendering its conflicts order in the DSL cases, this Court was clear back in 2016 that Broadcom had moved to disqualify McAndrews _**only**_ in the DSL cases:

> There are two sets of cases filed by Plaintiff. The above-captioned cases, which constitute the first set, relate to DSL technology. The other set of cases relates to MoCA technology. (*See* Civ. Act. No. 15-611; Civ. Act. No. 15-612; Civ. Act. No. 15-613; Civ. Act. No. 15-614; Civ. Act. No. 15-615; Civ. Act. No. 15-616). While some documents lump together McAndrews' work related to DSL and MoCA technologies, ***Broadcom _only_ seeks to disqualify McAndrews in the DSL cases***. (D.I. 143).") (emphasis added).

*2Wire*, No. 13-cv-1835, D.I. 238 at 4 n. 3. Notably, Judge Andrews ultimately did not disqualify McAndrews in the DSL cases. *Id.* at 17 ("Therefore, I conclude that disqualification is not the appropriate means of enforcing Rule 1.9(a) of the Model Rules of Professional Conduct.").

For the present MoCA cases, Broadcom could not have made the argument it made to avoid waiver in the DSL cases because TQ Delta's infringement allegations in the MoCA cases are (and have always been) entirely standards-based – *i.e.*, certain accused products employing Broadcom chips/firmware infringe because they implement functionality mandated by MoCA standards, which discovery from Broadcom is intended to prove. And while TQ Delta believes Broadcom has known at least since 2016 that TQ Delta's MoCA infringement allegations are

entirely standards-based, the timing of when Broadcom knew that is irrelevant because

Broadcom plainly represented that it would not seek disqualification in an entirely standards-

based case (*i.e.*, the timing of when Broadcom knew has nothing to do with the fact that the

MoCA cases are entirely standards-based).

If Broadcom believed it had some other angle to bring a conflicts motion in the MoCA

cases, it had ample opportunity to do so but chose not to. Thus, because Broadcom did not seek

disqualification of McAndrews or other conflicts related remedies in the MoCA cases when it

did so in the parallel-running DSL cases on February 19, 2016 (*2Wire*, No. 13-cv-1835, D.I.

143), and an additional 5 years have since passed, Broadcom has waived any right to seek such a

remedy now. *See Sauer Inc. v. Honeywell Bldg. Sols. SES Corp.,* 2012 WL 364050, at *2 (W.D.

Pa. Feb. 2, 2012) ("Waiver is a valid basis for the denial of a motion to disqualify . . . when a

former client was concededly aware of the former attorney's representation of an adversary but

failed to raise an objection promptly when he had the opportunity.").

Since TQ Delta's retention of Jackson Walker in August 2016, TQ Delta, relying on

Broadcom's prior representations and the actions Broadcom pursued and chose not to pursue, has

devoted resources in working with McAndrews and Jackson Walker and bringing along its

experts.[5] TQ Delta primarily retained Jackson Walker to assist with discovery in the MoCA

cases, including from another MoCA chip supplier similarly situated with Broadcom. In the first

half of September 2016, TQ Delta and McAndrews had already begun work to bring Jackson

Walker up-to-speed in the MoCA cases. For efficiency, and to avoid Broadcom from having to

sit directly across from its prior counsel in the MoCA cases (even though Broadcom had not

sought such an arrangement in the MoCA cases), TQ Delta added Broadcom discovery to

---

[5] While TQ Delta maintains that McAndrews is not at all conflicted with respect to Broadcom in
the MoCA cases, TQ Delta retained Jackson Walker to avoid Broadcom from having to sit
directly across from its prior counsel McAndrews in the MoCA cases.

Jackson Walker's responsibilities. Prior to the Court's September 26, 2016 conflicts orders in the DSL cases acknowledging Broadcom's prior failure to seek any conflict remedy in the MoCA cases, Jackson Walker had begun preparing MoCA chip supplier subpoenas, including those that were issued to Broadcom under Jackson Walker's signature on December 6, 2016.

The above shows that because Broadcom had not sought disqualification of McAndrews or any other conflict-related remedy in the MoCA cases at any time since their inception in July 2015, TQ Delta reasonably expected that Broadcom would not seek such remedies in the MoCA cases.

### B. Broadcom's Arguments To Avoid Waiver In The MoCA Cases Are Unavailing

Broadcom references a December 19, 2016 e-mail from Broadcom's counsel to Jackson Walker in which Broadcom's counsel stated: "I'm sure that you're aware that there was a motion to disqualify McAndrews in the DSL cases that everyone understood was applicable to the MoCA cases, too." *See* D.I. 292 at 3. It is remarkable that Broadcom relies on its own demonstrably false statement to support its Motion. As mentioned already, Judge Andrews's DSL case conflicts ruling made clear that Broadcom had not sought a conflicts remedy in the MoCA cases. And Jackson Walker had no reason to believe that the Court's September 2016 conflicts order in the DSL cases extended to the MoCA cases. To boot, Broadcom's argument that "everyone" understood the DSL orders applied here is inconsistent with its very own statement later on in its Motion that "[t]he only question is whether the walling orders in the DSL cases should also be entered here." D.I. 292 at 11.

What Broadcom's December 2016 e-mail does prove, however, is that Broadcom was aware of Jackson Walker's representation of TQ Delta back in 2016 and did not act on any supposed conflicts concerns for years. That e-mail also shows, like its present Motion, that

Broadcom cannot specifically point to any prior piece of work McAndrews did for Broadcom that is substantially related to the MoCA infringement allegations here.

Broadcom also suggests that "JW should have disclosed McAndrews' involvement to Broadcom in 2016." D.I. 292 at 4. But of course Broadcom absolutely knew of McAndrews's involvement in 2016 (and well before). *See 2Wire*, No. 13-cv-1835, D.I. 238 at 11 (Court in 2016 Order: "Broadcom concedes that it was aware of TQ Delta's lawsuits and McAndrews' representation[.]"). And when Broadcom did not raise a conflicts-related remedy in these MoCA cases when it did so in the DSL cases, and also argued that it did not have adversity to McAndrews in a purely standards-based case, there was no reason for Jackson Walker to raise these issues with Broadcom in the MoCA cases.

Broadcom goes on to additionally assert that Jackson Walker working with TQ Delta and the McAndrews firm to get up to speed in the MoCA cases in September 2016 was "inconsistent[]" with this Court's 2016 conflicts orders in the DSL cases. D.I. 292 at 4. Putting aside that Jackson Walker's work in the MoCA cases began ***before*** any conflicts order was entered in the DSL cases, Broadcom's assertion is clearly belied by the fact that this Court specifically stated that Broadcom sought to disqualify McAndrews "only" in the DSL cases. That distinction was just recently reiterated in the Court's order at D.I. 283.

Further, Broadcom's suggestion that the MoCA cases eventually being stayed in December 2016 somehow paused Broadcom's need to raise a conflicts issue (if any) does not make sense. *See* D.I. 292 at 9. As mentioned above, Broadcom knew that TQ Delta had brought on Jackson Walker to take discovery of Broadcom (to avoid Broadcom from having to sit directly across from McAndrews). Any alleged conflict would not have temporarily gone away while the cases were stayed. Jackson Walker could have continued to work with McAndrews during the stay, but Broadcom did not seek any conflicts-based restrictions in the MoCA cases

8

during that stay. Moreover, Broadcom's argument that the years-long stay in the MoCA cases somehow tolled Broadcom's conflicts concerns is at odds with the fact that another 4+ years have passed, lessening not maintaining the likelihood that McAndrews could use Broadcom confidential information one of its attorneys may remember from even longer ago (which they do not for the reasons explained herein). *See, e.g.*, *Walker Digital, LLC v. Axis Commc'ns AB*, No. 1:11-CV-558-RGA, 2012 WL 5878668, at *3 (D. Del. Nov. 21, 2012) ("Even assuming that Mr. DiBernardo learned of such general confidences indirectly from more senior attorneys at Morgan & Finnegan, ***it is not apparent at all how confidential knowledge of Walker Digital's strategies and plans fifteen years ago could be relevant to any issue in the case***, or harmful to Walker Digital in some other way."); *G.M. v. E.T.W.*, No. CN01-08714, 2006 WL 3197352, at *2 (Del. Fam. Ct. Sept. 12, 2006) ("[E]ven if confidential information obtained during Ms. Boudart's representation of Ms. C would somehow impact the representation of Mother, this information has likely 'been rendered obsolete by the passage of time,' Del. Lawyers' Rules of Prof'l Conduct R. 1.9 cmt. 3, as shown by Ms. Boudart's lack of memory regarding whether the child was mentioned in Ms. C's codicil.").

Thus, any conflicts-based remedy sought by Broadcom now – several years after the MoCA case were filed and Broadcom knew of Jackson Walker's involvement – has been forfeited and only serves to prejudice and stonewall TQ Delta's efforts to timely complete discovery within a relatively short post-stay discovery period.

### C. Broadcom's Motion Is Substantively Baseless

Broadcom does not meaningfully address any alleged violation of Rule 1.9(a) of the ABA Model Rules of Professional Conduct in the context of these MoCA cases. Instead, Broadcom relies entirely on blanket conclusions of: (1) relevance of purported MoCA matters handled by McAndrews; (2) McAndrews's supposed knowledge of Broadcom-specific MoCA information;

and (3) no harm to TQ Delta from the law firm and expert walls Broadcom seeks. All of these should be rejected.

First, Broadcom's failure to substantively support its allegation about McAndrews's prior MoCA-related work for Broadcom is easily shown.[6] Broadcom states that "McAndrews had worked to prosecute Broadcom patents covering many of the very same Broadcom semiconductor chips that McAndrews now, on behalf of TQD, accuses of infringing." D.I. 292 at 2 (citing *2Wire*, No. 13-1835, D.I. 238 at 10). **But** contrary to Broadcom's assertion, the Court order Broadcom cites to mentions **only** DSL technology as the basis for its finding of subject matter conflict (" . . . technologies relevant to DSL . . . technical documents related to DSL . . . Broadcom's DSL chips . . . the DSL chips.") and never mentions the Broadcom MoCA chips at issue in the present cases. *See also 2Wire*, No. 13-1835, D.I. 238 at 9 (referencing by model number specific DSL chips at issue in the DSL cases). Broadcom's Motion altogether fails to allege any specific insight or knowledge McAndrews gained from its work for Broadcom that goes to the implementation, operation, or source code of the MoCA chips subject to TQ Delta's subpoenas. Moreover, as to any patent applications that McAndrews filed for Broadcom, Broadcom's Motion fails to identify any specific application that is relevant to the implicated phase scrambling functionalities of the Broadcom MoCA chips at issue or any other confidential information Broadcom disclosed to McAndrews that somehow would prejudice Broadcom without the relief sought in its Motion. If, for example, Broadcom were able to show that applications McAndrews prosecuted were noted as prior art to the patents-in-suit (which Broadcom has not shown), even that is insufficient. *See Civco Med. Instruments Co., Inc. v.*

---

[6] Broadcom is no longer under the same management as during the period of McAndrews's representation. Avago Technologies Limited acquired Broadcom in 2016. Avago later changed its name to Broadcom. On information and belief, no in-house Broadcom attorney with whom McAndrews worked is still at Broadcom.

*Protek Med. Prods., Inc.*, No. 03-40722, 2004 WL 1326474, *6-7 (S.D. Iowa June 4, 2004) (finding no substantial relationship even where the adverse attorney had previously prosecuted patent applications that were actually cited as prior art to the patents asserted in the pending suit). Broadcom has simply failed to come forward with any actual evidence of Broadcom confidential information that McAndrews learned of from its years ago representation of Broadcom that could be used adversely to Broadcom in the MoCA cases.

In view of Broadcom's inability to identify any relevant MoCA-related work McAndrews performed for Broadcom, there is no showing to even suggest that McAndrews has any knowledge of Broadcom specific, MoCA-related confidential information that could be used in the MoCA cases. Even if McAndrews did – which it does not – Broadcom's position fails. For one, Broadcom itself acknowledged that there is no conflict arising from standards-based infringement allegations (though Broadcom now tries to divorce itself from that statement to the Court). *See 2Wire*, No. 13-cv-1835, D.I. 199 at 8 ("Were this case purely standards-based, Broadcom would not seek disqualification."). And further, presumably because these MoCA cases are entirely standards-based, Broadcom's Motion makes no showing that without its sought conflict remedies, Broadcom will experience adversity or potential liability. *See* Section I *supra*.

And also, TQ Delta, McAndrews, and Jackson Walker have all represented that "McAndrews has not and will not provide Jackson Walker with any Broadcom confidential information as to MoCA technologies that any McAndrews attorney may have learned of during their prior work for Broadcom." D.I. 282 at 3. At bottom, Broadcom's entire argument is predicated on allegations of knowledge (which does not exist) that could be misused (which TQ Delta and its counsel confirm will not happen, assuming McAndrews has any confidential knowledge to begin with) in a manner prejudicial to Broadcom (which cannot happen as the MoCA cases rest on entirely standards-based allegations).

11

Finally, Broadcom's statement that "[t]here also is no contention here that application of the walling orders to these MoCA cases would impose an unfair burden on TQD" (D.I. 292 at 5) is untrue.[7] TQ Delta stated in its letter at D.I. 282 that Broadcom's sought conditions would impose undue prejudice. D.I. 282 at 3 ("Broadcom's belated attempt to closely scrutinize past, and to tightly restrict future, interactions among McAndrews, Jackson Walker, and previously-retained experts would cause undue and prejudicial expense and delay to TQ Delta, particularly if the result is that Jackson Walker needs to be replaced or additional experts need to be found and retained."). As the Court specifically recognized, "[a]s Plaintiff has also retained McAndrews in the MoCA cases, it is invested in McAndrews beyond the [DSL] litigation." *2Wire*, No. 13-1835, D.I. 238 at 15 n. 5.

For example, TQ Delta retained expert Dr. Doug Chrissan in early 2016 to work with McAndrews in providing claim construction opinion testimony and consulting on infringement contentions and evidence in the MoCA cases. Broadcom's sought relief if granted would entail Dr. Chrissan having to be replaced with a new expert to work with Jackson Walker, which process would waste valuable time to find and retain a suitable expert and then additional significant resources to bring that expert up-to-speed.

Further, consulting on discovery obtained by Jackson Walker will be a necessary part of determining whether Broadcom has provided information sufficient for purposes of TQ Delta's infringement case. It is likely that the mechanism for source code discovery will involve production of a complete source code database at an escrow facility where TQ Delta's source code review expert will have a limited amount of source code that they will be allowed to then

---

[7] Broadcom cannot and does not speak for TQ Delta and its counsel when asserting that "TQD and its counsel effectively operated under the walling orders in the DSL cases for years" (D.I. 292 at 5). Broadcom is unaware of the difficulties and hardships TQ Delta and its counsel faced due to the conflicts management framework in the DSL cases.

print. TQ Delta will be put at a substantial disadvantage if its lead counsel is not allowed to

consult with Jackson Walker and TQ Delta's source code review expert regarding what code

should be printed for use in developing expert reports.

### D. Broadcom's Arguments As To The Scope Of TQ Delta's Subpoenas Are Of No Moment

While conceding that TQ Delta's infringement allegations are standards-based,

Broadcom also laments that because TQ Delta's subpoenas specifically request confidential

information (*i.e.*, proof of standards-based implementation), the subpoenas are somehow

unreasonable or burdensome. D.I. 292 at 7. But, as is the case with any standards-based

infringement theory, the plaintiff must show that the accused products in fact implement the

sections of the standard upon which it reads the asserted claims. The Broadcom technical

documentation and source code sought by TQ Delta's subpoenas are relevant and proportional to

the needs of this case to prove that point.

Further, Broadcom has failed to show any undue harm resulting from production of

confidential information responsive to TQ Delta's subpoenas. Broadcom is not a named

defendant and has not shown that it has any financial interest impacted by TQ Delta's MoCA

cases. Broadcom has not shown that it has any obligation to defend or indemnify the defendants

or Broadcom's MoCA chip customers (who are in turn MoCA equipment suppliers to the

defendants).

Broadcom's complaints about burden in its Motion are also surprising given that

Broadcom unilaterally refused to discuss compliance with the subpoenas with Jackson Walker,

which has been prepared to address any legitimate concerns about overbreadth and undue

burden. Soon after issuance of Judge Andrews's June 25, 2021 order at D.I. 283, Jackson Walker

again attempted to substantively and in detail discuss and further TQ Delta's subpoenas (Exh. 1

hereto, at 2 (W. Qureshi June 25, 2021 e-mail)), but Broadcom responded that it had "put on

hold" any such discussion (*id.* at 1 (E. Manno June 28, 2021 e-mail)). Thus, it is disingenuous for

Broadcom to now in its Motion complain about scope and burden – Broadcom has steadfastly

refused to substantively discuss the subpoenas at all.

## III.   CONCLUSION

For the foregoing reasons, TQ Delta respectfully requests that the Court deny

Broadcom's Motion and order Broadcom to comply with TQ Delta's subpoenas in the MoCA

cases without further alleged conflicts related obstacles injected by Broadcom.

Dated: July 16, 2021                                Respectfully submitted,

                                                    FARNAN LLP

                                                    /s/ *Michael J. Farnan*
                                                    Brian E. Farnan (Bar No. 4089)
                                                    Michael J. Farnan (Bar No. 5165)
                                                    919 North Market Street, 12th Floor
                                                    Wilmington, Delaware 19801
                                                    (302) 777-0300
                                                    (302) 777-0301 (Fax)
                                                    bfarnan@farnanlaw.com
                                                    mfarnan@farnanlaw.com

                                                    Wasif Qureshi (admitted *pro hac vice*)
                                                    Jackson Walker LLP
                                                    1401 McKinney St., Suite 1900
                                                    Houston, Texas 77010
                                                    (713) 752-4200
                                                    wqureshi@jw.com

                                                    Blake T. Dietrich (admitted *pro hac vice*)
                                                    Jackson Walker LLP
                                                    2323 Ross Ave., Suite 600
                                                    Dallas, Texas 75201
                                                    Telephone: (214) 953-6000
                                                    bdietrich@jw.com

                                                    *Counsel for Plaintiff TQ Delta, LLC*

14