## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>COMCAST CABLE COMMUNICATIONS LLC,<br><br>      Defendant. | Civil Action No. 15-611-GBW<br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>COXCOM, LLC and COX COMMUNICATIONS, INC.,<br><br>      Defendants. | Civil Action No. 15-612-GBW<br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>TIME WARNER CABLE INC., and TIME WARNER CABLE ENTERPRISES LLC.,<br><br>      Defendants. | Civil Action No. 15-615-GBW<br><br>**FILED UNDER SEAL** |
| TQ DELTA, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>VERIZON SERVICES CORP.,<br><br>      Defendant. | Civil Action No. 15-616-GBW<br><br>**FILED UNDER SEAL** |

## <u>MEMORANDUM ORDER</u>

Pending now before the Court are:

1. Plaintiff TQ Delta, LLC's ("Plaintiff" or "TQ Delta") Motions to Strike Non-Infringing Alternative Opinions of Dr. Apostolos Kakaes (the "Kakaes I Motions"), which have been fully briefed in the following cases:

    a. **No. 15-611**: D.I. 568 (Motion); D.I. 569 (Opening Brief); D.I. 602 (Opposition Brief); D.I. 605 (Reply Brief);

    b. **No. 15-612**: D.I. 553 (Motion); D.I. 554 (Opening Brief); D.I. 587 (Opposition Brief); D.I. 592 (Reply Brief);

    c. **No. 15-615**: D.I. 563 (Motion); D.I. 564 (Opening Brief); D.I. 601 (Opposition Brief); D.I. 604 (Reply Brief); and

    d. **No. 15-616**: D.I. 572 (Motion); D.I. 573 (Opening Brief): D.I. 607 (Opposition Brief); D.I. 610 (Reply Brief);

2. Plaintiff's Motions to Strike Non-Infringement Opinions of Dr. Apostolos Kakaes (the "Kakaes II Motions"), which have been fully briefed in the following cases:

    a. **No. 15-611**: D.I. 571 (Motion); D.I. 572 (Opening Brief); D.I. 604 (Opposition Brief); D.I. 607 (Reply Brief);

    b. **No. 15-612**: D.I. 556 (Motion); D.I. 558 (Opening Brief); D.I. 589 (Opposition Brief); D.I. 594 (Reply);

    c. **No. 15-615**: D.I. 567 (Motion); D.I. 568 (Opening Brief); D.I. 602 (Opposition Brief); D.I. 606 (Reply Brief); and

    d. **No. 15-616**: D.I. 579 (Motion); D.I. 581 (Opening Brief); D.I. 608 (Opposition Brief); D.I. 612 (Reply Brief);

2

3. Plaintiff's Motions to Strike Indefiniteness Opinions of Dr. Anthony Acampora (the "Acampora Motions"), which have been fully briefed in the following cases:

   a. **No. 15-611**: D.I. 577 (Motion); D.I. 581 (Opening Brief); D.I. 603 (Opposition Brief); D.I. 606 (Reply Brief);

   b. **No. 15-612**: D.I. 561 (Motion); D.I. 562 (Opening Brief); D.I. 588 (Opposition Brief); D.I. 593 (Reply Brief);

   c. **No. 15-615**: D.I. 574 (Motion); D.I. 576 (Opening Brief); D.I. 600 (Opposition Brief); D.I. 605 (Reply Brief); and

   d. **No. 15-616**: D.I. 583 (Motion); D.I. 584 (Opening Brief); D.I. 606 (Opposition Brief); D.I. 611 (Reply Brief); and

4. Defendant Time Warner Cable Inc.'s and Defendant Time Warner Cable Enterprises LLC's (together, "Time Warner") Motion to Strike certain opinions in the reply report of Dr. Madisetti (the "Madisetti Motion"), which has been fully briefed in the following case:

   a. **No. 15-615**: D.I. 589 (Motion); D.I. 591 (Opening Brief); D.I. 599 (Opposition Brief); D.I. 603 (Reply Brief).

The defendants in these four cases include: Comcast Cable Communications LLC; Coxcom, LLC; Cox Communications, Inc.; Time Warner Cable Inc.; Time Warner Cable Enterprises LLC.; and Verizon Services Corp. (collectively, "Defendants"). For the following reasons, the Court (1) grants-in-part and denies-in-part the Kakaes I Motions, (2) denies the Kakaes II Motions without prejudice, (3) denies the Acampora Motions without prejudice, and (4) denies the Madisetti Motion without prejudice.

## I.    BACKGROUND

On July 17, 2015, TQ Delta commenced the four actions captioned above. D.I. 1 (No. 15-611); D.I. 1 (No. 15-612); D.I. 1 (No. 15-615); and D.I. 1 (No. 15-616). On September 9, 2024,

TQ Delta filed an Amended Complaint in the same four actions. D.I. 7 (No. 15-611); D.I. 7 (No. 15-612); D.I. 7 (No. 15-615); and D.I. 7 (No. 15-616). In each of the Amended Complaints, TQ Delta alleged infringement of the following eight U.S. patents:

1. No. 6,961,369 (the '369 patent);

2. No. 8,718,158 (the '158 patent);

3. No. 9,014,243 (the '243 patent);

4. No. 7,835,430 (the '430 patent);

5. No. 8,238,412 (the '412 patent);

6. No. 8,432,956 (the '956 patent);

7. No. 8,611,404 (the '404 patent); and

8. No. 9,094,268 (the '268 patent).

D.I. 7 ¶¶ 33-96 (No. 15-611); D.I. 7 ¶¶ 34-97 (No. 15-612); D.I. 7 ¶¶ 32-95 (No. 15-615); D.I. 7 ¶¶ 38-101 (No. 15-616). According to the Amended Complaints, "TQ Delta is the owner by assignment of a portfolio of patents relating to highspeed communications technologies." D.I. 7 ¶ 8 (No. 15-611); D.I. 7 ¶ 10 (No. 15-612); D.I. 7 ¶ 8 (No. 15-615); D.I. 7 ¶ 12 (No. 15-616). The '158 and '243 patents remain at issue.

Additional background is provided as necessary below with respect to the individual motions discussed.

## II.    LEGAL STANDARD

"The decision to exclude evidence lies within the discretion of the Court." *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, No. 05-cv-132-JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). "Because striking critical evidence is an 'extreme sanction,' [a court's] discretion to do so isn't unlimited." *Wirtgen Am., Inc. v. Caterpillar, Inc.*, No. 17-cv-00770-JDW-MPT, 2024 U.S. Dist. LEXIS 7521, at *10 (D. Del. Jan. 16, 2024). The proponent of a motion to strike carries the

burden. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-cv-453-RGA, 2017 U.S. Dist. LEXIS 228867, at *13 (D. Del. Nov. 7, 2017).

## III.    DISCUSSION

### A.    The Court Grants-In-Part And Denies-In-Part The Kakaes I Motions

Aside from changes with respect to the names of the parties and pin cites to the individual records, the Kakaes I Motions and corresponding opening briefs are virtually identical. *See* D.I. 568, D.I. 569 (No. 15-611); D.I. 553, D.I. 554 (No. 15-612); D.I. 563, D.I. 564 (No. 15-615); D.I. 572, D.I. 573 (No. 15-616). The corresponding opposition and reply briefs are likewise virtually identical. *See* D.I. 602, D.I. 605 (No. 15-611); D.I. 587, D.I. 592 (No. 15-612); D.I. 601, D.I. 604 (No. 15-615); D.I. 607, D.I. 610 (No. 15-616). As such, the Court will reference only the motion and corresponding briefs in case no. 15-611 to facilitate the presentation of this Memorandum Order. However, the rulings and corresponding explanations herein will apply to each motion in each case.

On July 30, 2021, TQ Delta served Interrogatory 14 to Defendants requesting Defendants to "[i]dentify and describe in detail each alleged acceptable non-infringing alternative to the Patents in Suit." D.I. 570 Ex. C at 6 (No. 15-611). On February 25, 2022, Defendants served their final response to Interrogatory 14, in which Defendants identified various non-infringing alternatives ("NIAs"). D.I. 570 Ex. C at 14-20 (No. 15-611). On May 12, 2022, TQ Delta served Defendants with the opening expert report of Dr. Madisetti. D.I. 569 at 1 (No. 15-611). In that report, Dr. Madisetti "addressed the NIAs disclosed by Defendants in response to Interrogatory 14." D.I. 569 at 1 (No. 15-611). On March 21, 2024, Defendants served TQ Delta with the Kakaes Report, a report that allegedly includes "three new NIAs." D.I. 569 at 1 (No. 15-611) (citing excerpts of Kakaes Report, D.I. 570 Ex. A). On September 11, 2024, TQ Delta filed motions to

strike Dr. Kakaes' discussion of these NIAs pursuant to the Federal Rules of Civil Procedure. D.I.

568 (No. 15-611). Defendants contend that there is no basis for TQ Delta's motions.

Under the Federal Rules, parties "are obligated to supplement their contentions when it

becomes necessary to do so." *Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 325

(D. Del. 2016). This obligation applies to responses to interrogatories. *Id.* (citing Fed. R. Civ. P.

26(e)(1)(A) ("A party who has . . . responded to an interrogatory . . . must supplement or correct

its disclosure or response . . . in a timely manner if the party learns that in some material respect

the disclosure or response is incomplete . . . .")). "The Court has the power to exclude evidence,"

including experts reports or portions thereof, "as a sanction for a party's failure to comply with

this obligation." *Id.* "Specifically, Federal Rule of Civil Procedure 37(c)(1) provides that '[i]f a

party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to

use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure

was substantially justified or is harmless." *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

"In determining whether a failure to disclose is harmless, courts consider such factors as:

(1) the importance of the information withheld; (2) the prejudice or surprise to the party against

whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of

curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad

faith or willfulness in not disclosing the evidence." *Id.* (citing *Konstantopoulos v. Westvaco Corp.*,

112 F.3d 710, 719 (3d Cir. 1997)). These are often referred to as the *Pennypack* factors. *See, e.g.*,

*Glaxosmithkline LLC v. Glenmark Pharms. Inc., USA*, No. 14-cv-877-LPS-CJB, 2017 U.S. Dist.

LEXIS 21049, at *5 (D. Del. Feb. 6, 2017). The proponent of a motion to strike, including a

motion on the basis of the *Pennypack* factors, carries the burden. *See Acceleration Bay LLC v.*

*Activision Blizzard, Inc.*, No. 16-cv-453-RGA, 2017 U.S. Dist. LEXIS 228867, at *15 (D. Del.

Nov. 7, 2017) (acknowledging that the proponent of a motion to strike on the basis of the *Pennypack* factors carries the burden).

TQ Delta fails to satisfy its burden to demonstrate the propriety of striking Dr. Kakaes' discussion of each NIA, with one minor exception, as discussed below.

**1.     TQ Delta Fails to Meet its Burden to Strike Discussion of the First NIA**

The first (purported) NIA is an amplifier with a greater dynamic range. Having considered the record and the six *Pennypack* factors, the Court denies striking Dr. Kakaes' discussion of this purported NIA. Each *Pennypack* factor is discussed below.

**Importance of Information Withheld**: The information withheld here is important because it impacts the parties' "damages theory." *Wirtgen Am., Inc. v. Caterpillar, Inc.*, No. 17-cv-00770-JDW-MPT, 2024 U.S. Dist. LEXIS 7521, at *11 (D. Del. Jan. 16, 2024). Defendants contend that "the information TQ Delta seeks to exclude is not important" because the "Kakaes Report includes other NIAs beyond the three addressed here." D.I. 569 at 3. That an expert report contains other NIAs *not* addressed by a motion to strike, however, does not convey a lack of importance of the NIAs *actually* addressed by the motion to strike. This factor thus supports denying TQ Delta's motion to strike.

**Prejudice or Surprise**: The prospect that an amplifier with a greater dynamic range exists as an alternative to the claimed invention should be of limited surprise to TQ Delta because "higher power consumption" is expressly contemplated by the specifications of TQ Delta's '158 and '243 patents in the absence of the claimed invention. *Compare* '158 patent, 4:37-40 ("By scrambling the phase characteristics of the carrier signals, the resulting transmission signal has a substantially minimized peak-to-average (PAR) power ratio.") *and* '243 patent, 4:35-38 (same) *with* '158 patent, 2:27-29 ("An increased PAR can result in a system with high power consumption and/or with high probability of clipping the transmission signal.") *and* '243 patent, 2:25-27 (same). In

7

addition, TQ Delta had the opportunity to depose Dr. Kakaes during his two-day deposition and file a reply expert report, mitigating prejudice. This factor thus supports denying TQ Delta's motion to strike.

**Likelihood of Disruption of the Trial**: Denying striking discussion of this NIA from Dr. Kakaes' report will not disrupt trial since the Court has not scheduled trial. *See 3Shape A/S v. Align Tech., Inc.*, No. 18-cv-886-LPS, 2021 U.S. Dist. LEXIS 18452, at *3 (D. Del. Feb. 1, 2021) (holding that remedies to cure prejudice would not "disrupt trial" where it "has not yet been scheduled"). This factor thus supports denying TQ Delta's motion to strike.

**Possibility of Curing the Prejudice**: Any prejudice from not striking this purported NIA can be mitigated by issuing an instruction to the jury limiting their consideration of this information to the context of apportionment. This factor thus supports denying TQ Delta's motion to strike.

**Explanation for the Failure to Disclose**: The Defendants explained that TQ Delta should not be surprised by the discussion of this NIA since the NIA "tracks the very same concept that the specification says about the impact of high PAR and the pros and of known solutions." D.I. 602 at 2. The Court, as discussed above, credits this explanation. In addition, the Court acknowledges Defendants' contention that discussion of greater power consumption is done in the context of apportionment. As described above, an instruction to the jury limiting consideration of this information to the context of apportionment can mitigate prejudice. This factor thus supports denying TQ Delta's motion to strike.

**Presence of Bad Faith or Willfulness**: District courts in this circuit generally reserve a finding of bad faith "for only extreme circumstances." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1006 (D. Del. 2013). Here, TQ Delta does not assert, let alone demonstrate, any extreme circumstances. This factor thus supports denying TQ Delta's motion to strike.

2.    **TQ Delta Fails to Meet its Burden to Strike Discussion of the Second NIA**

The second NIA is a second-stage bit scrambler.  Having considered the record and the six *Pennypack* factors, the Court denies striking Dr. Kakaes' discussion of this NIA.  Each *Pennypack* factor is discussed below.

**Importance of Information Withheld**: The information withheld here is important because it impacts the parties' "damages theory." *Wirtgen Am., Inc.*, 2024 U.S. Dist. LEXIS 7521, at *11.  TQ Delta contends that "the information TQ Delta seeks to exclude is not important" because the "Kakaes Report includes other NIAs beyond the three addressed here." D.I. 569 at 3. That an expert report contains other NIAs *not* addressed by a motion to strike, however, does not convey a lack of importance of the NIAs *actually* addressed by the motion to strike.  This factor thus supports denying TQ Delta's motion to strike.

**Prejudice or Surprise**: A more detailed discussion of this NIA should be of little surprise to TQ Delta because Defendants previously disclosed this NIA, even if in limited form.  D.I. 569 at 2-3 (admitting disclosure); *see TQ Delta, LLC v. Adtran, Inc.*, No. 14-cv-954-RGA, 2021 U.S. Dist. LEXIS 158538, at *12 (D. Del. Aug. 23, 2021) (denying motion to strike and not addressing *Pennypack* factors because expert properly "expanded" on a non-infringement defense disclosed in fact discovery, including through an interrogatory response, an expansion of which is "permissible" because "all details of a non-infringement defense need not be disclosed" in interrogatory responses).  Insofar as TQ Delta believes that Defendants' disclosure of this NIA lacked detail, TQ Delta could have requested additional information.  In addition, TQ Delta had the opportunity to depose Dr. Kakaes during his two-day deposition and file a reply expert report, mitigating any prejudice. *Wirtgen Am., Inc.*, 2024 U.S. Dist. LEXIS 7521, at *11 (denying striking expert opinion and stating: "If Caterpillar wanted to drill down on why or how Dr. Lumkes reached that conclusion, it had a chance at the deposition to do so.").  Finally, TQ Delta relies on *Natera*

9

(D.I. 569 at 3 (citing *Natera, Inc. v. CareDx, Inc.*, 20-cv-00038, D.I. 392 (October 6, 2023)) to support a showing of surprise, but the defendant in *Natera* made "no attempt to demonstrate that it timely disclosed the NIA" at issue, unlike the defendants here. *Natera, Inc., Inc.*, D.I. 392. This factor thus supports denying TQ Delta's motion to strike.

**Likelihood of Disruption of the Trial**: Nothing in this order will disrupt trial, which has not yet been scheduled. This factor thus supports denying TQ Delta's motion to strike.

**Possibility of Curing the Prejudice**: Since there is little if any prejudice, there is no need to cure any prejudice. This factor thus supports denying TQ Delta's motion to strike.

**Explanation for the Failure to Disclose**: The Defendants explained that this NIA "was timely disclosed." D.I. 602 at 3. Timely disclosure is an adequate explanation. This factor thus supports denying TQ Delta's motion to strike.

**Presence of Bad Faith or Willfulness**: District courts in this circuit generally reserve a finding of bad faith "for only extreme circumstances." *Withrow*, 967 F. Supp. 2d at 1006. Here, TQ Delta does not assert, let alone demonstrate, any extreme circumstances. This factor thus supports denying TQ Delta's motion to strike.

**3.    TQ Delta Generally Fails to Meet its Burden to Strike Discussion of the Third NIA**

The third NIA concerns the elimination of bit repetition as used in diversity mode. Having considered the record and the six *Pennypack* factors, the Court denies striking Dr. Kakaes' discussion of this NIA (with one exception stated below). Each *Pennypack* factor is discussed below.

**Importance of Information Withheld**: The information withheld here is important because it impacts the parties' "damages theory." *Wirtgen Am., Inc.*, 2024 U.S. Dist. LEXIS 7521, at *11. TQ Delta contends that "the information TQ Delta seeks to exclude is not important" because the "Kakaes Report includes other NIAs beyond the three addressed here." D.I. 569 at 3.

That an expert report contains other NIAs *not* addressed by a motion to strike, however, does not convey a lack of importance of the NIAs *actually* addressed by the motion to strike. This factor thus supports denying TQ Delta's motion to strike.

**Prejudice or Surprise**: A more detailed discussion of this NIA, generally, should be of little surprise to TQ Delta because Defendants disclosed this NIA, even if in limited form. D.I. 569 at 3 (admitting disclosure); *see TQ Delta, LLC*, 2021 U.S. Dist. LEXIS 158538, at *12 (denying motion to strike and not addressing *Pennypack* factors because expert properly "expanded" on a non-infringement defense disclosed in fact discovery, including through an interrogatory response, an expansion of which is "permissible" because "all details of a non-infringement defense need not be disclosed" in interrogatory responses). Insofar as TQ Delta believes that Defendants' disclosure of this NIA lacked detail, TQ Delta could have requested additional information. TQ Delta also had the opportunity to depose Dr. Kakaes during his two-day deposition and file a reply expert report, mitigating any prejudice. *Wirtgen Am., Inc.*, 2024 U.S. Dist. LEXIS 7521, at *11 (denying to strike expert opinion and stating: "If Caterpillar wanted to drill down on why or how Dr. Lumkes reached that conclusion, it had a chance at the deposition to do so."). In addition, prejudice is mitigated because the Court will strike the portion of Dr. Kakaes' report that Defendants admit may be prejudicial, i.e., the portion regarding the "NASA Tracking Data Relay Satellite System." D.I. 602 at 3. Finally, TQ Delta relies on *Natera* (D.I. 569 at 3 (citing *Natera, Inc.*)) to support a showing of surprise, but the defendant in *Natera* made "no attempt to demonstrate that it timely disclosed the NIA" at issue. *Natera, Inc., Inc.*, D.I. 392. This factor thus supports denying TQ Delta's motion to strike the remaining portions of Dr. Kakaes' discussion of this NIA.

**Likelihood of Disruption of the Trial**: Nothing in this order will disrupt trial. Trial has not yet been scheduled. This factor thus supports denying TQ Delta's motion to strike.

**Possibility of Curing the Prejudice**: Since there is little if any prejudice, there is no need to cure any prejudice. This factor thus supports denying TQ Delta's motion to strike.

**Explanation for the Failure to Disclose**: As before, the Defendants explained that this NIA "was timely disclosed." D.I. 602 at 3. Timely disclosure is an adequate explanation. This factor thus supports denying TQ Delta's motion to strike.

**Presence of Bad Faith or Willfulness**: As before, district courts in this circuit generally reserve a finding of bad faith "for only extreme circumstances." *Withrow*, 967 F. Supp. 2d at 1006. Here, TQ Delta does not assert, let alone demonstrate, any extreme circumstances. This factor thus supports denying TQ Delta's motion to strike.

## B.    The Court Denies The Kakaes II Motions Without Prejudice

Aside from changes with respect to the names of the parties and pin cites to the individual records, the Kakaes II Motions and corresponding briefs (like the Kakaes I Motions and corresponding briefs) are virtually identical. *See* D.I. 571, D.I. 572, D.I. 604, D.I. 607 (No. 15-611); D.I. 556, D.I. 558, D.I. 589, D.I. 594 (No. 15-612); D.I. 567, D.I. 568, D.I. 602, D.I. 606 (No. 15-615); and D.I. 579, D.I. 581, D.I. 608, D.I. 612 (No. 15-616). As such, the Court will reference only the motion and corresponding briefs in case no. 15-611 to facilitate the presentation of this Memorandum Order. However, the rulings and corresponding explanations herein will apply to each motion in each case.

On November 30, 2016, this Court construed the term "phrase scrambler" to mean "component operable to adjust the phases of the carrier signals, by pseudo-randomly varying amounts." D.I. 214 at 6-7. The Court similarly construed the phrase "scrambling the phase characteristics of the carrier signals" to mean "adjusting the phase characteristics of the carrier signals by pseudo-randomly varying amounts." D.I. 214 at 7.

At the November 14, 2024 hearing, the parties agreed that various claim construction disputes informing the Kakaes II Motion are pending before the Court in other vehicles. As such, the Court will deny the Kakaes II Motions without prejudice. TQ Delta may renew its request for relief as appropriate after the Court resolves those claim construction disputes.

**C.    The Court Denies The Acampora Motions Without Prejudice**

The Acampora Motions and corresponding briefs are identical. *See* D.I. 577, D.I. 581, D.I. 603, D.I. 606 (No. 15-611); D.I. 561, D.I. 562, D.I. 588, D.I. 593 (No. 15-612); D.I. 574, D.I. 576, D.I. 600, D.I. 605 (No. 15-615); and D.I. 583, D.I. 584, D.I. 606, D.I. 611 (No. 15-616). As such, the Court will reference only the motion and corresponding briefs in case no. 15-611 to facilitate the presentation of this Memorandum Order. However, the rulings and corresponding explanations herein will apply to each motion in each case.

On December 6, 2016, this Court issued a claim construction order following a *Markman* hearing. D.I. 218. On May 12, 2022, Defendants served TQ Delta with the expert report of Dr. Acampora ("Acampora Report"). *See* D.I. 581 at 1. TQ Delta contends that the Acampora Report includes indefiniteness contentions that this Court should strike because (1) the determination of indefiniteness is a legal conclusion, (2) Defendants "never raised and pursued" these indefiniteness contentions "during the *Markman* process," (3) Defendants said they would "not move for summary judgment on indefiniteness issues," and (4) Defendants "plan to raise indefiniteness during trial and elicit testimony regarding the purported indefiniteness of the meaning of claim terms in the presence of the jury." D.I. 581 at 1-2 (citations omitted).

The Court agrees that indefiniteness is generally a matter of law for the Court to resolve. The Court will order Defendants to raise and present their specific indefiniteness contentions in and through a summary judgment motion and accompanying briefing. Defendants also will be required to rank their summary judgment motion on indefiniteness among and as part of ranking

their other motions for summary judgment for the Court's consideration. The Court also will deny the Acampora Motions without prejudice. TQ Delta may renew its request for relief, as appropriate, after the Court resolves the pertinent summary judgment motion(s).

**D.    The Court Denies The Madisetti Motion Without Prejudice**

In its Motion, Time Warner moves to strike portions of Dr. Madisetti's reply expert report. Before addressing Time Warner's specific contentions, the Court will summarize the relevant assertions between the two parties' experts.

On May 12, 2024, Dr. Madisetti executed an expert report on infringement of the asserted claims ("Madisetti Opening Report"). D.I. 599 Ex. A. In this report, Dr. Madisetti asserted:

> It is my opinion that the Accused MoCA Products infringe the Asserted Claims because they comprise the recited elements of the claims as construed by the Court, including the necessary hardware and firmware for performing the functionality recited in the claims without the need to rebuild, rewrite, or recompile the code for, or redesign any of that hardware and/or firmware.

D.I. 599 Ex. A ¶ 234. Then, Dr. Madisetti identified the source code and various evidence to show the structure and function of the hardware and firmware of the Accused Products. D.I. 599 Ex. A ¶¶ 235-44. Dr. Madisetti later asserts:

> Defendant contends that in view of Court's construction of "operable to" as meaning "in operation to" in a different case (*TQ Delta v. ADTRAN*), "TQ Delta has not shown that Defendant's product in operation to practice" claims 7, 12, 13, 14 and 20 of the '243 patent. Defendants['] blind reliance on the Court's construction in *TQ Delta v. ADTRAN* is improper because it does not take into consideration that the patents for which the term was construed in that case are unrelated to the '243 patent and, thus, the term appears in the context of different claims with a different intrinsic record. . . . There is nothing in the plain and ordinary meaning of "operable to" or in the intrinsic record of the '243 patent that would justify rewriting "operable to" to read "in operation to" or to effectively turn claims 7, 12, 13, 14 and 20 into method claims where use is required before infringement can be found. The Accused MoCA Products are, undeniably, operable to perform the functionality recited in claims 7, 12, 13, 14 and 20.

D.I. 599 Ex. A ¶ 1004.

In response, Dr. Kakaes filed a rebuttal report ("Kakaes Rebuttal Report"). D.I. 591 Ex. 4. Therein, Dr. Kakaes states: "The term 'operable to' has not been construed by the Court in this matter. However, I understand that the Court has construed 'operable to' in another TQ Delta matter to mean 'in operation to.'" D.I. 591 Ex 4 ¶ 68. Dr. Kakaes then, relying on this construction, asserts:

> The accused devices that do not have MoCA enabled (*see* ¶¶5-11 and 34, above) are not "operable to" perform the claimed functionality identified above. In order to perform the accused MoCA functionality (i.e., to be "operable to" perform that functionality), an accused device must at least have MoCA enabled (among other criteria). Dr. Madisetti has not cited any evidence that the accused devices for which MoCA is disabled—every accused Wireless Extender, every accused Wireless Gateway, or every accused STBs that could not be used with whole-home DVR and those STBs that could be used in TWC's whole-home DVR service that were in customers' homes who did not subscribe to TWC's whole-home DVR service and, therefore, never had MoCA enabled—are operable to perform the above claim requirements.
>
> Thus, in my opinion, any accused MoCA devices that are not deployed with MoCA enabled cannot infringe any of the asserted apparatus claims because, as a threshold issue, those devices are not "operable to" perform any functionality (through the MoCA interface), let alone the claimed functionality identified above. For any accused MoCA devices that have been deployed with MoCA enabled, those devices nonetheless do not infringe for the reasons set forth elsewhere in my report, including those set forth in my main Report in § VIII ("Non-Infringement").

D.I. 591 Ex. 4 ¶¶ 69-70.

On June 24, 2024, Dr. Madisetti executed his reply expert report ("Madisetti Reply Report"). D.I. 591 Ex. 1. Time Warner moves to strike paragraphs 56-63 of the Madisetti Reply Report. D.I. 591 at 3. Paragraphs 56-60 quote the Kakaes Rebuttal Report and express disagreement for the reasons explained in paragraphs 61-63. D.I. 591 Ex. 1 ¶¶ 56-63. In paragraph 61, Dr. Madisetti "agree[s] that the apparatus claims to which Dr. Kakaes refers . . . require that the claimed apparatus be 'operable to' perform the functionality recited" but disagrees with Dr. Kakaes' "construction and application of that term." D.I. 591 Ex. 1 ¶ 61. In paragraph 62, Dr. Madisetti rebuts Dr. Kakaes' construction of the term "operable to." D.I. 591 Ex. 1 ¶ 62. In

15

paragraph 63, Dr. Madisetti rebuts Dr. Kakaes' contention that Dr. Madisetti never asserted an infringement theory over the Disabled Devices. D.I. 591 Ex. 1 ¶ 63; *see also* D.I. 591 (referring to the Accused Products that do not have the allegedly infringing technology enabled as the "Disabled Devices").

Time Warner contends that the Court should strike these paragraphs (i.e., paragraphs 56-63 of the Madisetti Reply Report) because they (1) advance "an infringement theory that was not in" the Madisetti Opening Report and (2) set "forth a full-blown legal analysis to support [Dr. Madisetti's] reliance on a claim construction from a Texas court that has not been adopted by this Court (and that was rejected by Judge Andrews in other TQD cases)." D.I. 591 at 1.

The bedrock of the parties' disagreement is the meaning of "operable to" in the Asserted Patents, i.e., a claim construction dispute. The Court will order the parties to submit additional briefing on this claim construction dispute and resolve it as required by *O2 Micro*. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."). The Court also will deny the Madisetti Motion without prejudice. Time Warner may renew its request for relief as appropriate after the Court issues its supplemental construction.

## IV.    CONCLUSION

For the foregoing reasons, the Court (1) **GRANTS-IN-PART** and **DENIES-IN-PART** the Kakaes I Motions, (2) **DENIES** the Kakaes II Motions without prejudice, (3) **DENIES** the Acampora Motions without prejudice, and (4) **DENIES** the Madisetti Motion without prejudice.

\* \* \*

16

WHEREFORE, at Wilmington this 19th day of November, 2024, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Kakaes I Motions (D.I. 568 (No. 15-611); D.I. 553 (No. 15-612); D.I. 563 (No. 15-615); D.I. 572 (No. 15-616)) are **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court strikes from Dr. Kakaes' rebuttal report all references to "NASA Tracking Data Relay Satellite System." The parties and their experts shall not raise the content of any stricken material at any point during the trial. Any party wishing the Court to issue a limiting instruction to the jury consistent with this Memorandum Order must include such instruction when submitting proposed jury instructions.

2. Plaintiff's Kakaes II Motions (D.I. 571 (No. 15-611); D.I. 556 (No. 15-612); D.I. 567 (No. 15-615); D.I. 579 (No. 15-616)) are **DENIED** without prejudice.

3. Plaintiff's Acampora Motions (D.I. 577 (No. 15-611); D.I. 561 (No. 15-612); D.I. 574 (No. 15-615); D.I. 583 (No. 15-616)) are **DENIED** without prejudice.

4. Defendants' Madisetti Motion (D.I. 589 (No. 15-615)) is **DENIED** without prejudice.

5. On or before December 2, 2024, TQ Delta shall file its opening brief, not to exceed ten (10) pages double-spaced, setting forth its proposed construction of the claim term "operable to" in the Asserted Patents and the support for its proposed construction. On or before December 16, 2024, Defendants shall file their answering brief, not to exceed ten (10) pages double-spaced, setting forth their proposed construction of the claim term "operable to" in the Asserted Patents and the support for their proposed construction. On or before December 23, 2024, TQ Delta shall file its reply brief, not to exceed five (5) pages double-spaced.

6. On or before December 2, 2024, Defendants shall file their combined motion for summary judgement on indefiniteness and opening brief in support of their combined motion for

summary judgment on indefiniteness in all relevant cases specifically asserting any and all indefiniteness contentions on behalf of Defendants. On or before December 16, 2024, TQ Delta shall file its response and answering brief in opposition to Defendants' combined motion for summary judgment on indefiniteness. On or before December 23, 2024, Defendants shall file their reply brief in further support of their combined motion for summary judgment on indefiniteness. In accordance with D. Del. LR 7.1.3, Defendants' opening brief shall not exceed twenty (20) pages, TQ Delta's answering brief shall not exceed twenty (20) pages, and Defendants' reply brief shall not exceed ten (10) pages, exclusive of any table of contents or table of citations.

7. Because this Memorandum Order is filed under seal, the parties shall meet and confer and, no later than fourteen (14) days after entry of this Memorandum Order, submit a joint proposed redacted version of this Memorandum Order, accompanied by a supporting memorandum, detailing how, under applicable law, the Court may approve any requested redactions. In the absence of a timely, compliant request, the Court will unseal the entire Memoranudm Order.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE